1          UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF OHIO
2              WESTERN DIVISION

3  UNITED STATES OF AMERICA,     )  Docket No. 3:10CR463

4           Plaintiffs,          )  Toledo, Ohio

5              v.                 )  December 3, 2012

6  BRANDON M. ROBINSON,          )  SENTENCING

7           Defendants.          )

8  -----------------------------

9              TRANSCRIPT OF SENTENCING
           BEFORE THE HONORABLE JACK ZOUHARY
10             UNITED STATES DISTRICT JUDGE

11 APPEARANCES:

12 For the Plaintiffs:   United States Attorneys' Office
                         By:  James V. Moroney, Jr.
13                       801 Superior Avenue, W,  Suite 400
                         Cleveland, Ohio 44113
14                       (216) 622-3827

15

16 For the Defendant:    Andrew P. Hart
                         Office of the Federal Public Defender
17                       617 Adams Street
                         Toledo, Ohio 43604
18                       (419) 259-7370

19 Court Reporter:       Angela D. Nixon, RPR, CRR
                         1716 Spielbusch Avenue
20                       Toledo, Ohio 43624
                         (419) 260-5259

21

22

23 Proceedings recorded by mechanical stenography, transcript

24 produced by notereading.

25

```
1          THE COURT:  Please be seated everyone.  Good

2     afternoon.  We're here on case number 10CR463-01, United

3     States versus Brandon Robinson.  We're here for a

4     sentencing.  The defendant is present in court along with

5     his counsel Andy Hart.

6          On behalf of the government we have AUSA James

7     Maroney, and with him Jake Hardy.  And we have, from

8     pretrial/probation Shawna Sizemoore.  As I indicated, this

9     matter is here for a sentencing.  The defendant is charged

10    in an indictment filed in November of 2010.  There was a

11    guilty plea with a plea agreement in July of this year,

12    2012.  Pursuant to that plea agreement, the defendant pled

13    guilty to Count 1, sex trafficking of a minor, and to be

14    dismissed at the end of this hearing will be Count 2,

15    transportation of a minor.  Presentence report has been

16    prepared and shared.  It is dated October 10, 2012, amended

17    October 16, with a final revision date of November 20.

18         The face sheet reveals that Count 1, sex

19    trafficking of a minor, carries with it a penalty as

20    follows, a mandatory minimum of at least ten years up to

21    life, a $250,000 fine and at least five years and up to

22    life of supervised release.  I have reviewed the

23    presentence report and discussed briefly with counsel prior

24    to taking the bench and have reviewed the government's

25    sentencing memorandum.  And that sentencing memorandum is
```

 1  reflected on our docket as document number 59.  Pursuant to

 2  that sentencing memorandum, and I think we will take care

 3  of this next, the government is moving for a three level

 4  departure under 5K1.1.  And as requested, a side bar for

 5  The Court, and I would invite then counsel to come up for

 6  side bar on that motion at this time.

 7                    (A side bar conference was had on the

 8                    record.)

 9            MR. MORONEY:  Your Honor, we've moved in our --

10  in our sentencing memo for a level three reduction.  The

11  plea agreement said up to four, we think that the three

12  levels is fair.  The defendant and the agents, Special

13  Agent Hardy and task force officer Swartz sat down before a

14  proffer, and as we've assessed what's been provided, I

15  think of significance is the agreement to participate while

16  incarcerated in the behavioral analysis unit ongoing study

17  of prostitution and pimp activities, which has an

18  immediate, I believe, practical impact in terms of the

19  Innocence Lost task forces and the information that gets

20  put out to the field by BAU for dealing with these cases

21  and dealing with these people.  So that certainly is very

22  significant.  We're also looking at a particular individual

23  who was on community in Florida.  In fact, was mentioned in

24  the Anniesha Whitt case as the first very violent pimp who

25  remains a person of strong interest in terms of the future

1    kids, and this defendant provided us information about the

2    Fat Daddy or Mr. Lipsey, L-I-P-S-E-Y.  So I think for those

3    reasons, three levels is -- is fair.  And we'd ask you to

4    depart in that level.

5              THE COURT:  Was the information he provided you

6    truthful, complete and reliable, all three?

7              MR. MORONEY:  Yes.

8              THE COURT:  And did you find the information

9    useful?

10             MR. MORONEY:  We expect that it will be, Judge,

11   yes.

12             THE COURT:  And was his assistance to you timely?

13             MR. MORONEY:  I can't conceive other than --

14             MR. HART:  If I -- I mean, if I can speak to

15   that, Your Honor, courtroom calls Mr. Robinson had about a

16   12 or 15 month hiatus where his medical needs were being

17   taken care of at the medical center.  I think that would

18   probably offer a greater explanation as to why the

19   cooperation did not take earlier rather than later.  Almost

20   immediately upon returning after receiving the medical

21   treatment, he did execute the plea agreement and agreed to

22   cooperate.

23             THE COURT:  Okay.  The Court will grant the

24   government's motion for three levels.

25             MR. MORONEY:  Oh, Judge.  Can I raise one issue,

```
 1    and I apologize I didn't bring this up before.  There

 2    were -- there were two firearms seized in the search.  I

 3    meant to ask you if we can -- if you would agree with an

 4    order just to destroy those?

 5              MR. HART:  That would be fine.  I mean, I'll talk

 6    to Brandon, but I don't see why that would be a problem.

 7              THE COURT:  If I forget, remind me.

 8                   (Side bar concluded.)

 9              THE COURT:  I'm back on the full record.  The

10    Court grants the government's motion, and next we'll

11    confirm with counsel the guideline range in this case.  The

12    presentence report indicates that there are no unresolved

13    objections.  And again, having talked closely with counsel

14    for both sides prior to taking the bench, and I'm referring

15    to pages 21 of the addendum to the presentence report as

16    well as the face sheet dated November 20.  There is,

17    however, a discrepancy between the calculations and the

18    plea agreement.  And The Court will follow the plea

19    agreement in this case, and will now confirm with counsel

20    that we're dealing with an offense level of 26.  That

21    includes the 5K1 motion and includes acceptance of

22    responsibility, bringing us down to a -- an offense level

23    26, which reflects also a criminal history category of

24    three.  I did note that the presentence report calculated

25    three points, not four points.  Three points would be a
```

1   criminal history category two.  It reflects four points

2   which would be a criminal history category three.  And when

3   you add up the points in paragraphs 36, 37, 38, 39 and 40,

4   there are three points.  So paragraph 41 is amended to

5   reflect a criminal history score of three.  However, the

6   offense in paragraph 36, carrying a concealed weapon under

7   the appropriate guideline 4(A)1.2 (j) allows court to

8   consider an expunged conviction, which if not counted, may

9   be considered under 4(A)1.3.  And 4(A)1.3 indicates that an

10  upward departure can be granted if reliable information

11  indicates that the defendant's criminal history category

12  substantially underrepresents the seriousness of the

13  defendant's criminal history, or the likelihood that the

14  defendant will commit other crimes.  An upward departure

15  may be warranted.  The Court is, therefore, going to make

16  two alternative rulings, first, that upward departure under

17  that guideline is appropriate in this case for the reasons

18  set forth in subsections (A)1.  The Court would also

19  indicate for the record that for those factors, as well as

20  others that I will announce later, that a variance would be

21  appropriate into that same guideline range of 78 to 97

22  months.  Therefore, under either a departure or a variance

23  standard, I am confirming that the guideline range in this

24  case is 78 to 97 months.

25          With that, let me confirm with counsel for both

1    sides that you have reviewed the report, that I have

2    correctly summarized the maximum penalties that the

3    defendant is facing, and that I have also correctly

4    identified the guideline range in this case.

5            MR. MORONEY:  Your Honor, we are satisfied with

6    the computations, have no objections to what you've just

7    stated.

8            THE COURT:  Thank you.

9            MR. HART:  Your Honor, with respect to the first

10   part of The Court's finding that a departure would be

11   justified in increasing the criminal history category from

12   a two to a three, we will, at this point in time, object to

13   the departure in support of that.  Obviously we'll be

14   discussing any factual findings The Court makes with

15   respect to a variance in support of that, but we would

16   object to The Court's finding that there is a sufficient

17   basis for the increase from what we believe should be a

18   category two at this time.

19           THE COURT:  Thank you.  Let me confirm with the

20   defendant, Mr. Robinson, that you've had an opportunity to

21   review the presentence report and discuss it with your

22   lawyer; is that correct?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Very good.  Report will be filed,

25   made part of the record in this case under seal and

```
 1    available as necessary.  I also want the record to reflect
 2    that I have received and reviewed a number of letters on
 3    the defendant's behalf.  I will not identify each of them
 4    other than to indicate that they are from family and
 5    friends and appreciate the time that those folks have taken
 6    to give me more information about the defendant.  And I
 7    think with that we can save further comment for later in
 8    the discussion.
 9            Having identified all the materials, I think I'm
10    prepared now, unless anyone has any additional materials,
11    to turn the floor over to defense counsel to argue for an
12    appropriate sentence on its client's behalf.
13            MR. HART:  Thank you, Your Honor.  Your Honor, as
14    The Court notes, having administered a number of these
15    types of cases, the conduct in these types of cases runs
16    very wide range of relevant conduct.  And, you know, I have
17    had, whether or not my anecdotal comments are worth
18    anything, some experience in different types of similar
19    cases, and I think that the offense conduct in this case is
20    very important.  I think it's something that The Court
21    needs to assess and base the sentence on.  That having been
22    said, I do think that it is very arguably and very
23    reasonably a basis for The Court to depart from the
24    guideline range based on the offense conduct in this case.
25            Contrary to the majority of cases that come
```

1  before this court, along these same lines, it's my

2  understanding, and that there's never been any credible

3  evidence to support that Mr. Robinson engaged in any of

4  these activities with force or threat of force.  I've

5  carefully reviewed the government's synopsis of how victim

6  in this case came to be involved with Mr. Robinson and

7  Ms. Whitt.  There doesn't appear to be any coercion in that

8  regard.  And in fact, during the I think approximately two

9  week period of time that the victim was involved with

10  Mr. Robinson and Ms. Whitt, there doesn't appear to be any

11  indication that she remained there under force or threat of

12  force.

13          Now, certainly in an ordinary sense The Court

14  doesn't give credit for somebody for not engaging in force

15  or threat of force type behavior.  But the guidelines in

16  this case do contemplate these types of offenses, and these

17  types of offenses do typically involve that sort of

18  conduct.  And I think it's very important and relevant to

19  note that the way in which the victim became involved, the

20  way in which she remained involved was characteristically

21  different.  I guess the better way of describing it would

22  be that it would be effectively the minimal amount of

23  conduct necessary to even substantiate the offense itself.

24  There doesn't appear to be -- with respect to that, any

25  aggravating circumstances that I think The Court would rely

1    on in imposing even a guideline sentence, or more

2    importantly a higher than guideline sentence.  With respect

3    to getting into more of minutia of the actual offense

4    conduct.  There's a fine line between Mr. Robinson

5    acknowledging responsibility for his conduct and trying to

6    assess his behavior relative to the behavior of other

7    persons in this case.  I'd be remiss if I didn't attempt to

8    draw some comparison to this court's findings and the

9    sentence imposed upon Ms. Whitt.  Now, obviously Ms. Whitt

10   pled to a different count, but the offense conduct itself

11   still should be assessed similarly to Mr. Robinson, and I

12   think that her sentence should serve as a reference point

13   to this court's consideration of whether a variance is

14   appropriate for Brandon.  And obviously, Ms. Whitt had

15   somewhat longer history of involvement in this type of --

16   these type of activities prior to her even meeting

17   Mr. Robinson.

18           There's a document in history that she had with

19   somebody that has absolutely no connection to Mr. Robinson

20   that obviously was a very bad episode in Ms. Whitt's life

21   that she had to endure with.  The offense conduct itself

22   does appear to involve Ms. Whitt's participation in some of

23   the organization of what was going on with the victim in

24   this case.

25           Now, certainly Brandon was involved, Brandon was

1   aware of what was going on, and I think very importantly,

2   particularly over the past couple of years Brandon's had

3   the opportunity to really assess what was occurring during

4   this time period, which was that he took advantage of an

5   opportunity, and that opportunity involved the

6   victimization of a young girl.  He hasn't made any excuses

7   for that.  He hasn't attempted to minimize that.  But I

8   think that it's important for The Court to try to reconcile

9   what was relatively a low sentence for Ms. Whitt and her

10  conduct which, in my approximation, does come very similar

11  to the same conduct that Mr. Robinson finds himself before

12  The Court.

13            THE COURT:  Really?  You don't think he was the

14  man in charge?

15            MR. HART:  Your Honor, I think that if we're

16  trying to use some sort of an abstract diagram to see who

17  was in charge and who wasn't, it was much more of a linear

18  horizontal structure rather than a vertical structure.

19            THE COURT:  Who collected the money decided who

20  got what?

21            MR. HART:  Your Honor, and I think that this

22  would be somewhat of a debate, I think that what was

23  occurring was that Ms. Whitt was with the victim.

24  Ms. Whitt collected the money, and then Mr. Robinson,

25  Ms. Whitt and the victim were basically all using the money

1    contemporaneously.  I'm not going to try to purport to The

2    Court that there was an even distribution or get into the

3    mechanics of it, but I don't think that this was the

4    typical scenario in which all of the proceeds basically

5    were taken and delivered and given to Mr. Robinson from

6    these activities.  And I think that what I'm submitting to

7    The Court is probably focused less on the financial aspect

8    of it as opposed to who was actually managing the actual

9    activities of the prostitution.

10           Typically what you would find in these types of

11   cases is that there is a great degree of physical control,

12   manipulations, threats and things like that, which the

13   person who's the so called person in charge is exerting to

14   all the people below them to compel them to remain in these

15   activities.  Now, I'm submitting to The Court that at least

16   the way that that part of this dynamic was structured is

17   categorically different than the majority of cases that

18   have come before The Court.  And so I do think that there

19   is a legitimate basis to use Ms. Whitt's conduct and her

20   sentence as a reference point.  And as I said it's a fine,

21   you know, distinction to be made between accepting

22   responsibility for his participation in the affairs with

23   trying to assess his culpability with the culpability of

24   the group of people that were actually all involved within

25   this offense.

1          With that being said, Your Honor, there is some

2     indication that Mr. Robinson had some contacts with these

3     types of activities prior to the two week period of time

4     that we're dealing with the alleged victim.  But I think

5     what's notable is that he was arrested, or at least he was

6     stopped by The State patrol I believe in June of I think it

7     was 2009, and that the arrest on this case wasn't affected

8     until November of 2010.  And there's no indication between

9     June of 2009 and November of 2010 that there was a

10     continuation of these types of activities.

11          THE COURT:  Is that surprising to you?

12          MR. HART:  Well, I'm offering it to The Court

13     from the point that what you typically find in these types

14     of cases is people who are the top of the hierarchy, people

15     who are controlling, people who routinely and repeatedly

16     engage in these types of activities routinely engage in

17     these types of activities.  And there's no indication after

18     the Ohio State Patrol affected the traffic stop that

19     Mr. Robinson continued to engage in any of these

20     activities.  There's no indication that he was even an

21     idea, that he was even the target of a federal

22     investigation for almost a year-and-a-half after the

23     traffic stop was affected.  And once again, you know,

24     there's -- it's logically difficult to try to offer

25     somebody credit for not engaging in these types of affairs,

```
1    but I think that his decision in the absence of any
2    indication on the record that he did continue to engage in
3    these affairs is a relative point, particularly if The
4    Court's trying to assess the need to protect the public,
5    whether or not there has been sufficient rehabilitation and
6    what not.
7              THE COURT:  Do you think the fact that the
8    federal agents acquired a search warrant in July of 2009
9    had any impact perhaps on how he chose to conduct himself?
10             MR. HART:  Once again, Your Honor, you can accept
11   anecdotal comments for what they're worth, but it's my
12   experience that no, that does not generally have an impact
13   on somebody who is, in fact, predisposed to continuing to
14   engage in criminal activity.  Your Honor, Mr. Robinson
15   obviously from the presentence report has normal stable
16   family.  He's an articulate person.  He's an intelligent
17   person.  He and I have had the opportunity to discuss at
18   some length what I anticipated The Court's question would
19   be, which is to offer some sort of explanation as to why
20   since approximately the time he was 18 years of age up
21   until his arrest for this he had two or three contacts with
22   The Courts, because his history doesn't present the typical
23   type of disadvantages that you associate with somebody who
24   had the contacts with The Courts.  And he's going to try to
25   address that on a more personal level when he has a
```

1    conversation with The Court shortly.

2            But I think that if The Court is really trying to

3    assess today what the appropriate sentence is, the question

4    before The Court is what period of time is necessary in

5    order to impose an adequate punishment for Mr. Robinson.

6    But at the same time offering the appropriate deterrence

7    not just for this conduct but for any type of criminal

8    conduct.  And he's been in custody for slightly over two

9    years I believe at this point.  His pretrial detention, in

10   my opinion, has been much more severe than the average

11   period of pretrial detention in that when he was originally

12   brought in, he had a fairly significant knee condition.

13   The knee condition deteriorated.  It then deteriorated to

14   such an extent that his good knee deteriorated as well.

15   And it was only at some period of time that the government

16   actually intervened and helped provide him with the medical

17   treatment that he required.  But during that period of time

18   he was unable to engage in conversations, he was unable to

19   function.  He was going through an extraordinary amount of

20   pain.  I think coupled with that experience as well as the

21   stress and the anxiety and everything has had a dramatic

22   impact on him that even a two year period of pretrial

23   detention does not ordinarily have on another person.  I

24   think that, you know, this has had a huge impact on his

25   perspective.  I don't think that he has any intention of

1    doing anything other than trying to allow some of his

2    abilities to guide him through the rest of his life.  With

3    that, Your Honor, I'll defer to him.  He can hopefully

4    address on a more personal level and answer any questions

5    that The Court has.

6            THE COURT:  Thank you.  Mr. Robinson, the floor

7    is yours.  Anything you wish to add to what your lawyer has

8    just said?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  Oh, surely you have something to say.

11   I've had two years to give this some thought, and I have to

12   believe that you have something you'd like me to know

13   before I take on the very difficult task of determining

14   what your sentence should be.

15           THE DEFENDANT:  Well, I thought you would have

16   some questions for me, but that --

17           THE COURT:  I can ask you some questions, but I'm

18   going to give you the opportunity to make an opening

19   statement, if you will.  If there's something you want to

20   make sure I know, this is the time to do it.

21           THE DEFENDANT:  Well, basically everything that

22   Mr. Hart has informed The Court is truly true.  During this

23   period of incarceration has truly endured a lot, and in the

24   midst of this situation, this incarceration, I believe I

25   know it has completely changed me.

```
1              THE COURT:  Tell me how so.  What have you
2    learned during this two year period?
3              THE DEFENDANT:  This two year period through all
4    the pain and agony and struggles has mentally, physically,
5    emotionally has humbled me and matured me to another level.
6    I understand more about the law and the penalty of stupid
7    judgment that I was making.
8              THE COURT:  So that tells me that you knew prior
9    to getting caught that what you were doing was wrong, what
10   you didn't know was that you would be facing this much
11   time.
12             THE DEFENDANT:  Yes, Your Honor.  And I --
13             THE COURT:  Did you, during this two year period,
14   give any thought to how awful this crime was?
15             THE DEFENDANT:  Yes, Your Honor.
16             THE COURT:  Do you understand why the penalties
17   for this crime are severe is because the crime is severe?
18             THE DEFENDANT:  Yes, Your Honor.  I understand
19   that.
20             THE COURT:  How do I, Mr. Robinson, explain these
21   letters I have received from people, some of whom you've
22   known your entire -- or for a very long period of time, and
23   describe you as a good person.  With the record I have in
24   front of me that shows the kind of conduct you've engaged
25   in over a number of years, conduct which is, I don't know
```

1    what word to use, you have firearms on a regular basis, you

2    are engaged in this awful industry of child and adult

3    prostitution, who are these two people?  You're a Jekyll

4    and Hyde.

5            THE DEFENDANT:  I wouldn't say all that, sir.

6    But each situation that I -- that I went through during my

7    past I can't necessarily say was justified, but it was a

8    reason behind it.  The first CCW I received was because I

9    had purchased a gun to protect myself from my stepfather

10   who had threatened to kill me and my family.  I know that

11   now wasn't the proper direction.  I should have went and

12   trying to seek protection, but I was young, and as I said

13   before, I was stupid, made very unintelligent decisions on

14   how to approach situations.

15           The second one occurred as me trying to pick up a

16   few extra dollars transporting a gun, another stupid

17   decision, but at the time I was trying to purchase my liver

18   medicine that cost $108 at the time.  And my income wasn't

19   coming in and my family was struggling.  So when the

20   opportunity presented itself, I thought it was a quick

21   dollar and it would help me resolve the solution, the

22   problem, resolve the problem.  Excuse me.  And once again

23   it was a dumb stupid decision on my behalf that I

24   approached, once again, completely wrong.  And this

25   situation I'm currently in now --

```
 1            THE COURT:  Yes, tell me about that.

 2            THE DEFENDANT:  Well, I was engaged in a

 3    relationship with my co-defendant, Ms. Whitt, who had

 4    previous experience, contact with the industry.  And I was

 5    introduced to it through her.  And to help her out at first

 6    I was doing it and then, you know, the love that I had for

 7    her led me to stay involved in it.  And then I started

 8    benefiting from it to help me, you know, do the things I

 9    desired to do and continue to pay for medicine.  But that

10    does not justify it, but me not thinking, once again,

11    making unconscious, unwise decisions and socializing with

12    individuals that are involved in criminal activity was a

13    big reason to many of the charges that I have.  And as I

14    said before, this situation had humbled me and mentally

15    matured me.  Now I know that it's not necessary always to

16    factor up a individual doing a crime that can cause you to

17    be a criminal.  It's those that you hang out with and

18    socialize that can bring you around the environment of

19    criminal activities that you may be attempted or

20    manipulated to engage in.  That is also a downfall.  So as

21    I sit here thankful for the situation because it has truly

22    opened my eyes and humbled me and matured me.  I know now

23    that I have to be cautious and understand that just because

24    I'm in a certain situation or in need of certain amount of

25    money, that I cannot, should not and will not engage in
```

 1    criminal activities to allow that to be the solution.

 2            THE COURT:  Some of what you say, Mr. Robinson,

 3    may be true, but you are tip toeing around, dancing around

 4    a very important fact.  Paragraph 10 of the PSR, in early

 5    June 2009 defendant met C.B., this is the minor, who was

 6    age 14.  At the time C.B. had run away from a foster home

 7    some three weeks prior to meeting you, the defendant.  You

 8    gave her your phone number, and some two days later she

 9    phoned you at which time you picked her up.  You asked C.B.

10    to prostitute for you and took her to Anniesha Whitt's

11    address where you introduced her to Anniesha whom you

12    identified as one of your prostitutes.  C.B. agreed to

13    prostitute, you provided her with clothing to wear while

14    prostituting, instructed her what fees to charge for

15    various sex acts and told her she would be prostituting at

16    truck stops.  You provided her with a cell phone to

17    communicate with him and/or Whitt.  She told you that she

18    was 17 and provided you with a false name and a false date

19    of birth.  If she was ever stopped or arrested by law

20    enforcement, you provided her with that information.  I'm

21    just going to read that one paragraph because I think

22    that's important because this is not just a case of someone

23    who was greedy, which I think you've acknowledged that you

24    were.  You called it quick dollar or something like that,

25    some call it easy money.  You describe yourself as having

```
 1   made dumb or stupid mistakes, I would add another adjective
 2   to all of that, dangerous, perhaps.  You said you've
 3   learned to be cautious.  What's there to be cautious about,
 4   Mr. Robinson?  Be righteous.  You had face-to-face contact
 5   with a 14 year old girl that you had engaged in
 6   prostitution for you, for money.  That's what you did.  And
 7   it's awful.
 8           Let's hear from the government.  There's some
 9   points raised I'd like you to address, the fact that no
10   force or threat of force was used, that no aggravating
11   factors exist here, that he was not in charge, that I'm not
12   sure whether defendant or counsel are claiming Whitt was in
13   charge, but there certainly was more or rather less
14   involvement by defendant than one might think.  He calls
15   Whitt the reference point for sentencing in this case and
16   also focuses on the time of the last two years where
17   defendant has been incarcerated and has apparently seen the
18   error of his ways.
19           MR. MORONEY:  Thank you, Your Honor.  Your Honor,
20   this court has had the benefit of recently sentencing
21   Anniesha Whitt, and it struck me in terms of the -- first
22   of all, let me say that the government did not allege
23   force, fraud and coercion in charging this particular case.
24   And that is simply a fact.  It doesn't mean that the case
25   isn't permeated with undue influence which takes on the
```

```
 1    aura of coercion in terms of the facts of the case.  And it
 2    struck me in thinking about that, that a statement that
 3    Anniesha Whitt made, and it's in paragraph 25 of her
 4    revised plea agreement.  She says I was prostituting for
 5    Robinson in 2009.  He brought C.B., the 14 year old, to my
 6    place and forced me to take her in by physically abusing me
 7    when I didn't accept him bringing her over.  He grabbed me
 8    around my neck and lifted me off my feet and choked me when
 9    I told him I didn't want him bringing other girls,
10    prostitutes, to my home with my kids.  I don't like being
11    beat up so after that I did what he wanted.  It -- it's
12    interesting that when you look what the victim has said in
13    terms of the false birth date, the Sarah Jackson identity,
14    lying to the police, you know, all of those things speak to
15    the influence that Mr. Robinson had over this person who I
16    don't think that I could say it better than The Court did,
17    you're dropping off a 14 year old at a truck stop, not to
18    be overly dramatic about it, Your Honor, there are women
19    missing from truck stops across Northern Ohio.  You're
20    dropping a 14 year old off at a truck stop and having her
21    go cab to cab and using their C.B. radios to arrange the
22    next date.  And you're dropping them off and you're waiting
23    for a cell phone call to come back at 2:30 or 3:00 and pick
24    them up.  You're not even staying on site to be sure that
25    they're, if you can be safe in that kind of a situation.
```

1    So Your Honor, I think that just speaks volumes.  The

2    conduct itself is what drives the sentence in this case.

3    That's why we ask for a sentence at the high end of what we

4    feel is the appropriate 78 to 97 month sentencing range.  A

5    couple things about that, though, this defendant should

6    really consider that he's received an enormous break in the

7    handling of this case.  Both counts in this case had

8    mandatory minimum ten years, maximum life, and arguably

9    certainly the government, because there's a factual element

10   separate in Count 2, that is the actual transportation

11   across state lines, that those at least mandatory minimums

12   should have stacked this case proceeded to trial.  So that

13   you're really talking about a 20 year sentence to life.

14   And there are enormous -- there are a number of breaks that

15   were extended to this defendant, including affording him a

16   5K departure, including sticking with the plea agreement as

17   opposed to the two additional levels identified by

18   probation officer Sizemoore.  So to be in that range is a

19   tremendous break for this defendant.

20         I was struck too by several things that he said

21   in terms of his acceptance of responsibility.  In paragraph

22   19 Mr. Robinson acknowledged he transported Anniesha to

23   Detroit for purposes of prostitution.  He acknowledged that

24   during this time, with the assistance of Anniesha, other

25   girls agreed to work for him in the same manner.  He

1    acknowledged that he traveled with girls out of state for

2    prostitution, and that it was his primary source of income

3    up until his instant offense arrest date.  We simply don't

4    know, Your Honor.  And I would agree with highlighting the

5    fact that the highway patrol stop is June of '09 and

6    Special Agent Hardy and the task force execute a search

7    warrant in July of 2009.  We simply don't know from that

8    point until the federal case was approved and brought

9    exactly what activities he was involved in, but I suspect

10   we have a pretty good idea.

11          The -- he says in paragraph 20 he transported the

12   women over state lines into Michigan for acts of

13   prostitution.  He also readily acknowledged that the girls

14   game him the money they earned from their prostitution

15   activities.

16          In paragraph 21 he indicated he was somewhat glad

17   he was caught because the situation could have gotten a lot

18   worse, which I think is a remarkable statement to make.

19   Your Honor, again, as we said in our sentencing memorandum,

20   we think that a sentence at the 78 to 97 range is

21   appropriate and it should be at the high end of that range

22   for all the reasons that we've talked about.  Thank you.

23          THE COURT:  Any last words?

24          MR. HART:  Just to clarify, and I'm not sure that

25   it's a necessary point to debate, but it's my understanding

1   that Mr. Robinson was never accused of having been involved

2   in these activities without Ms. Whitt, and I believe

3   Ms. Whitt confirmed that after the highway state patrol

4   stop, she didn't have any contact with him.  So I would

5   just resubmit the point to The Court that it does appear to

6   have been a cessation of activity in that regard.

7          THE COURT:  Thank you.  Mr. Robinson, my sentence

8   in this case is guided by 2005 U.S. Supreme Court decision

9   in Booker and later cases from our Supreme Court as well as

10  cases from our circuit court.  And all of these cases

11  require me to consider the guideline range, which we have

12  just discussed and confirmed at 78 to 97 months.

13         I'm also to make an individualized assessment of

14  you based on the facts presented in your case, a process

15  that involved an exercise in judgment.  And you may recall

16  at the time of your guilty plea, we discussed a statute,

17  which I told you we would talk about today.  That statute

18  we call 3553(a).  And that statute lists factors for me to

19  take into account and to arrive at a sentence that is

20  sufficient but not greater than necessary, balancing the

21  factors from your case and the statute to arrive at a just

22  punishment, and that's what I will do next, address those

23  factors and how I see them applying to your case.

24         First, factor for me to consider, the nature of

25  the crime.  It is set forth in some detail and we've

1  discussed it a bit here in the presentence report and

2  paragraphs 7 through 13 beginning with the stop of the

3  vehicle you were driving with both Anniesha and C.B. in the

4  car.  A search of the vehicles found items which suggested

5  prostitution.  Both Ms. Whitt and C.B. provided false names

6  during that stop.  And their inconsistent answers caused

7  further questions to take place.  They were wearing

8  clothing indicative of prostitution, and C.B. acknowledged

9  to the officer she was a juvenile and prostituting at your

10  direction at a truck stop in Beaver Damn, Ohio.

11          I earlier referenced paragraph ten, and so I

12  won't repeat it here, and I believe the government

13  indicated in paragraph 11 that you had driven C.B. to truck

14  stops to engage in prostitution, and Anniesha Whitt on the

15  first few occasions also was involved with C.B.,

16  accompanying her during those acts.  At those truck stops,

17  C.B. would travel from truck cab to truck cab, use the C.B.

18  radios of trucker customers to arrange for acts of

19  prostitution at your direction.  C.B. would add the

20  cellular phone number of the truckers to the memory of the

21  cell phone provided to her by you.  After several hours,

22  four to five hours, Whitt would call you to arrange for a

23  pick up either at the truck stop or nearby gas station.

24  Before each trip to a truck stop, you would provide them

25  with condoms and lubricant to use with customers.  After

1    picking up the women, they would give you the proceeds of

2    the prostitution acts.  While C.B. was staying with you and

3    Ms. Whitt, you provided her with clothing, alcohol,

4    marijuana and other hygiene items.  C.B. believed she made

5    some $7,000 during the 10 to 11 days that she prostituted

6    for you.

7            That is, in short verse, what brings us here

8    today.  I'm also to take a look at your character and

9    background, and would note before I move on that you did

10   accept responsibility and were given a three-point

11   reduction for that.  That's outlined in paragraph 17

12   through 21, and you did readily admit that you acted as a

13   pimp for both Anniesha and C.B. in July of 2009.  You

14   acknowledge that you transported Anniesha to Detroit for

15   prostitution, and at some point you and she apparently went

16   your separate ways and then resumed a relationship.  At

17   some point you and Anniesha began traveling to truck stops

18   for prostitution, and you began, in your words, to branch

19   out and acquire your own girls.  You also sought out girls

20   who were recommended to him by other girls or associates

21   which is how you became acquainted with C.B.  You

22   acknowledge that you informed C.B. you could help her earn

23   some money through acts of prostitution.  And you had

24   Ms. Whitt teach C.B. about the prostitution lifestyle and

25   how to conduct herself.  You transported women over state

1  lines into Michigan, and you readily acknowledge that the

2  girls gave you the money they earned from their

3  prostitution activities.  It is, Mr. Robinson, not a very

4  pretty picture of what brings us together today.

5           The presentence report also, as part of your

6  character and background, we look at your adult criminal

7  convictions, carrying a conceal weapon in 2002, firearms in

8  2005, obstructing business in 2006, drug abuse in 2009,

9  burglary in 2009, and other charges and arrests set forth

10  in paragraphs 44 and 45.  One of those being another CCW,

11  carrying a concealed weapon.

12           Your personal and family data is summarized in

13  paragraphs 47 through 56.  Discussing your family

14  relationship, close relationship with your mother, your

15  siblings, your biological siblings and your maternal half

16  siblings.  You are not married.  You do have maybe a child

17  with Anniesha, her oldest child.  Apparently you believe

18  that's your biological son but that has not been confirmed.

19  You are 29 years old; is that right?

20           THE DEFENDANT:  I'm 30, sir.

21           THE COURT:  30, just turned 30 a few weeks ago.

22  And at 30 years old if we look at your educational and

23  vocational skills and your work record, we see that you

24  have completed high school at the Life Skills Center

25  apparently in June of 2004, you were enrolled at Monroe

1   Community College intermittently during '05 and '06 and did

2   not complete that.  And your work record, spotty at best,

3   is summarized in paragraphs 69 through 71.

4          This is what the presentence report tells me

5   about you, Mr. Robinson, the factor under the statute that

6   I am to take into account.  I did acknowledge earlier and

7   want to again acknowledge the letters because I suspect

8   some of the family members and friends are in the back who

9   have written these letters, and, again, some of them talk

10  about you being a close and dear friend, full of promise,

11  found a new life in religion, cousins who have written on

12  your behalf, uncle who has written on your behalf.  Talking

13  about your relationship with the family and that you are a

14  quote, unquote, great person.  You're now reading The

15  Bible, that you are of a good moral character.  Perhaps an

16  over exaggeration.  This is almost like the Godfather who

17  is wonderful to his family but was having people murdered.

18  And so I suppose there are some people who thought the

19  Godfather was just this great guy, and then probably a

20  number of other people who thought he wasn't such a nice

21  guy, and this may be why I'm getting a tale of two cities

22  with you.  You're making money from prostitution.  I

23  suspect you're probably helping some family members and

24  friends with it.  You're a great guy, but I cannot close an

25  eye to how you got that money and how you conducted

1   yourself.  There's an indication from one family member or

2   friend that this has been a terrible trying two years in

3   this jail for you.  You know what some people would say to

4   that Mr. Robinson, so what.  Look at the terrible trying

5   time that C.B. and others like her face over a lifetime

6   because of what you did in this case.

7            I understand your mom has some health issues and

8   this is difficult for her.  I'm sympathetic to that.

9   Mothers are special people.  This is what happens when

10  someone commits a crime.  It is not just you who suffers,

11  Mr. Robinson.  It is those who are close to you that

12  suffer.  They may not hear the cell door shut behind you,

13  but they suffer through your absence in their lives.  I

14  only wish you had not been, in your words, so dumb and so

15  stupid.  I only wish that you understood and appreciated,

16  which still apparently you don't, what an awful, awful

17  thing you did in this case.  A young innocent girl turned

18  on to prostitution so you could make money.  Your aunt,

19  your sister, you have a lot of people who love you and like

20  you and wrote nice letters on your behalf.  I only wish

21  they had stepped in and intervened.  I only wish that they

22  had slapped you across the face or done whatever it took to

23  startle you into an awareness of how awful this crime was.

24  But I can't turn the clock back so we have to look forward

25  into the future.  I really do hope, Mr. Robinson, that some

1    of what you said here today is, in fact, true, that you do

2    realize the enormity of the error of your ways, that you do

3    realize also that you have an opportunity once you come out

4    to do something different and hopefully do something more

5    positive.

6           I also am required under the statute to make sure

7    the sentence reflects the seriousness of the crime, promote

8    respect for the law, and provide a just punishment, deter

9    you and others from crimes like this and protect the

10   public.  And certainly all those factors I just listed

11   would indicate that a sentence within the guideline range,

12   some would probably say above the guideline range is

13   appropriate here.

14          To those family members who wrote and asked for

15   leniency and probation, I want you to know part of what

16   I've just discussed I hope you understand is I cannot sit

17   here and do whatever I want to do.  I have guidelines to

18   follow, and the guidelines I just recited would not allow

19   me to release you, Mr. Robinson, today.  That would be a

20   dereliction frankly of my duty.  That would be a sentence

21   waiting to be overturned.  I also want you to know that I

22   am going to include as part of my order that you be

23   provided with any appropriate training and treatment

24   because you will come out one day, you will have an

25   opportunity to do something different with your life, and I

1    hope that the system allows us to point you in the right

2    direction.  But in the final analysis, just as all those

3    decisions you made up until this crime in the final

4    analysis, it rests with you.  And you can point to Anniesha

5    as someone who brought you into this, but in the final

6    analysis, you could say no.  You could have pointed

7    yourself in a different direction.  It would be, again, as

8    if you were to blame someone who taught you how to steal

9    guns or use a gun illegally and say, well, it's their

10   fault.  No, it's not their fault.  Yes, maybe you had some

11   bad influence around you, but you're a smart and articulate

12   man, as your lawyer said, and you could have known and

13   should have known the difference and not put yourself in

14   the position that you now face.

15        I want to also address that I do not find,

16   Mr. Robinson, that you're some sort of a bystander in this.

17   You were involved in this, and your role is, I believe, a

18   larger role than your counsel suggested as I indicated by

19   reading from the presentence report.  You were the point

20   person on this, however reluctant you want me to believe

21   you were, you still were.  It went on for a period of time

22   as the presentence report indicates.  So this is not a

23   situation of oops, I made a small mistake one day, please

24   excuse me, this is a repetitive mistake that went on and on

25   and on and involved innocent people.  Yes, I have taken

1    into account the sentence for the co-defendant and that

2    sentencing order and my reasons are articulated.  I think I

3    also here take into account other sentences for like

4    crimes.  And we have had several sentences this year with

5    those involved in sex trafficking of minors.  And their

6    sentences were much longer than yours, and specifically I'm

7    referring to Anthony Willoughby and Mark Fetter.

8            Let me also indicate that point which was touched

9    on by the government, you are a bit of a Houdini in the

10   sense that you have escaped today with a sentencing range

11   that is much less than what it could have been given the

12   history that's in here and given the mandatory minimums

13   that you could have faced and given the Mann Act charges

14   that you could have faced and other items addressed in the

15   presentence report.  This was a heinous crime and I repeat

16   what I said earlier, some would say that a sentence within

17   the guideline range is not nearly long enough.

18           Pursuant to the Sentencing Reform Act of 1984,

19   it's the judgment of The Court, Mr. Robinson, that you be

20   sentenced to the Bureau of Prisons for a term of 96 months.

21   You will be given credit for your time served from November

22   of 2010.  I'm going to put you on supervised release for a

23   period of six years.  You can use that time hopefully by

24   reaching out to your probation officer to make sure that

25   you are on the straight and narrow.  I'm going to wave the

```
 1    fine in this case, finding you don't have the ability to
 2    pay a fine.  I'm going to order a special assessment of
 3    $100 due and payable immediately.  I understand there were
 4    some weapons confiscated in the search in this case.
 5              MR. HART:  Your Honor --
 6              THE COURT:  Yes.
 7              MR. HART:  There's no indication from
 8    Mr. Robinson that he would object to the destruction of
 9    those weapons.
10              THE COURT:  There's no indication that?
11              MR. HART:  He will not -- he does not object to
12    the destruction of those weapons.
13              THE COURT:  Very good.  Then that will also be
14    part of the order in this case.  Pursuant to the plea
15    agreement, Count 2 will be dismissed.
16              Counsel for either side know of any reason not
17    previously made why the sentence I have just outlined
18    should not be imposed?
19              MR. HART:  Your Honor, just to make sure that the
20    record's clear, we would restate the objection to The
21    Court's upward departure on the criminal history category,
22    the Court's denial of the request for variances, which I
23    think The Court did articulate very well in terms of what
24    the variances were, as well as the overall substantive
25    reasonableness of the sentence itself.
```

1        MR. MORONEY:  We have no objection to the

2   sentence as stated, Judge.

3        THE COURT:  Thank you.  Let me again indicate and

4   come full circle.  I did grant an upward departure based on

5   criminal history earlier for reasons stated, and some of

6   those reasons are included in the defendant's character and

7   back ground, the crime in this case and the seriousness of

8   that crime and the need to protect the public and deter

9   crimes like this.  Those same reasons also apply if this

10  were a category two.  I would reach up to the next level of

11  the guideline range again indicating for the record those

12  factors would apply and also referring to the background as

13  set forth in the presentence report of the history of this

14  defendant, along with the dangerousness of the prior crimes

15  and this crime as well and believe that all those factors

16  would justify a variance to the next level.

17       Have I addressed all arguments, anything that I

18  need to discuss with counsel before I deal with the

19  remaining paperwork?

20       MR. HART:  No, Your Honor.  We believe The Court

21  has addressed all the arguments raised.

22       MR. MORONEY:  You have, Judge.

23       THE COURT:  Thank you, Mr. Robinson.  You were

24  handed two documents prior to the start of the hearing.

25  One was a sentencing order regarding conditions of

1  supervised release.  And it details those conditions that

2  will take place once you are released from the Bureau of

3  Prisons.  Did you review this with your lawyer?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Did he answer any questions you had?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  I note this document is signed by

8  both defendant and his counsel with today's date.  I too am

9  signing it and it will be made part of the record in this

10 case.  The other document is the acknowledgment of the

11 waiver of appeal rights.  You may recall at the time I took

12 your guilty plea I indicated to you that by entering a plea

13 of guilty your appeal rights would be much more limited

14 than they otherwise would be.  You understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And that, in effect, is what this

17 document confirms.  And it contains your signature and your

18 lawyer and today's date; is that correct?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Very good.  That too will be filed

21 and made part of the record in this case.  Have you

22 discussed with your client a preference for designation?

23         MR. HART:  Your Honor, I haven't, but I would ask

24 The Court to include in its judgment entry that the Bureau

25 of Prisons pays particular attention to Mr. Robinson's

1   medical needs, not simply the -- his knees, but he has a

2   number of systematic issues, auto immune hepatitis and

3   other things that have traditionally caused a number of

4   problems during his pretrial detention.  And I think those

5   medical issues would require something more than what the

6   average correctional facility would offer.  So at least if

7   the Bureau of Prisons could take that into account in

8   assessing where the appropriate place would be.

9           THE COURT:  I will certainly do that.  In fact,

10  we probably should indicate that his designation ought to

11  turn in great part on the facility that can meet his

12  medical needs.  So we will make that recommendation,

13  Mr. Robinson, to the Bureau of Prisons.  You need to know

14  that ultimately the decision is theirs, not mine, but we

15  will make that recommendation.

16          The presentence report does not indicate any

17  substance abuse issues, and therefore, there's no need to

18  recommend that.  But I do want to recommend that this

19  defendant receive whatever job training and educational

20  opportunities they can provide you because I want to arm

21  you in a positive way, Mr. Robinson, with knowledge and

22  understanding and hopefully with some tools that will help

23  you when you get out and not have you face another court or

24  another judge.

25          With that, if there's nothing further, we are

1  adjourned.

2          MR. HART:  Thank you, Your Honor.

3          THE DEFENDANT:  Thanks.

1                           C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s:/Angela D. Nixon

7    ---------------------------                    -----------

8    Angela D. Nixon, RMR, CRR                      Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25